## LAURENCE C. SMITH
*vs.*
## HUGH M. ALCORN, SR. ET AL.

Superior Court       Hartford County       File No. 64379

MEMORANDUM FILED FEBRUARY 25, 1941.

*William H. Blodgett,* of Winsted, and *William M. Harney,* of Hartford, for the Plaintiff.

*Francis A. Pallotti,* Attorney General, and *Frank J. DiSesa,* Assistant Attorney General, for the Defendants.

INGLIS, J.   The plaintiff asks that "a temporary injunction issue enjoining the defendants, their servants, agents and employees from holding an examination set forth in Exhibit B."

It appears that on October 11, 1940, the defendant Donning, the State Personnel Director, announced an examination under the Merit System Act "to provide an employment list from which to certify for present and anticipated vacancies" in the office of assistant personnel director, applications for the taking of which were to be filed by October 26th.   The examination was announced to be in three parts, *i.e.* (1) experience and training (which was to be set forth in the application) (2) written test and (3) oral test.   These parts were to be given the weights of 4, 3 and 3 respectively.

Twenty-nine persons filed applications.   Of these, 12 were permitted by the Director to take the written test but only nine actually took it.   The plaintiff was one of those.   The marks received by the nine were 62, 54, 52, 51, 45, 41, 38, 36 and 35.   The plaintiff's mark was 51.

A committee had been appointed by the Director to assist him in the examination and the defendants Alcorn and Campbell were members of that committee.   After the written examination had been had and the marks reported, the committee met and went over the applications and marks of the nine men who had taken it.   They then decided, with the concurrence of the Director, "that the recruitment of candidates from within the State will not produce a list of three names from which a suitable selection can be made by the appointing authority."   It is to be noted that neither the committee nor the Director found that the plaintiff or indeed any specific applicant was disqualified for the position.   They

found only that out of the nine who had progressed that far with the examination there were not three who would be qualified to be placed on the eligibility list. On the strength of that finding the Director waived the residence requirement, purporting to act under section 669e of the 1939 Supplement to the General Statutes, and has announced a new examination open to any citizen of the United States irrespective of residence in Connecticut. The plaintiff and the eight others who had taken the former written examination were notified that their applications would be considered as applications for this second examination. It is this second examination which the plaintiff seeks to enjoin.

The plaintiff's first claim is that he is entitled to insist that the first examination shall be completed by the giving of the oral tests and that the Director then determine how many, if any, of those who took that examination are qualified to be put on the eligibility list. In this claim it would seem that he is right.

The Merit System Act provides (Sup. [1939] §640e) that appointments to position in the State service shall be made only according to merit and fitness, "to be ascertained by examinations, which examinations shall be competitive and given in accordance with the provisions of this chapter." It is clearly contemplated by the Act that only by way of examinations can a person gain a place on the eligibility list for any position. There is no requirement as to what a passing mark on an examination shall be and whether a person is qualified to go on the eligibility list is for the Director to decide. That is, as provided in section 655e, "in establishing any employment list following examinations, the director shall place on the list, in the order of their ratings, the names of persons who show they possess the qualifications which entitle them to be considered eligible to appointment when a vacancy shall occur in any position allocated to the class for which such test is held." So, although it is for the Director to decide whether a man's qualifications are such that he should be put on the eligibility list, he must base that decision on the results of the examinations to which the applicants have been subjected.

The Act having provided that the only way to the employment list being through an examination, takes pains to make sure that the examinations held under it shall be open to all

who are qualified and shall be fairly conducted. For instance, section 699e imposes a penalty on any one who "shall wilfully defeat, deceive or obstruct any person in respect to *his right* of taking any examination." (Italics supplied.) The Act re-quires that all of the terms and conditions of the examination including what weights shall be given to various parts shall be determined and announced in advance. It further pro-vides that each applicant is entitled to know the marks which he has received and his standing relative to the other applicants. Specifically, although section 660e provides that the Director may reject the application of any person for admission to a test or refuse to test any applicant or refuse to certify the name of an eligible, he may do so only for the specific reasons set forth in that section.

On the whole, therefore, it is clear that when a person files an application to take an examination, and in particular when he starts to take the examination, he gets under the Act certain rights. This is true generally under civil service laws (46 C.J. *Officers* §76), and it certainly is true under our law. The rights which he gets are to go through with the examina-tion on the terms originally announced and then the right to have the Director exercise his discretion and determine whether on the basis of the whole examination he, the applicant, is so qualified that his name should be placed on the eligibility list. So in the present case, the Director not having found any of the conditions to exist as to the present plaintiff or, indeed, as to any of the others who took the examination, specifically which would justify him under section 660e in refusing to continue to test them, it would ordinarily be the duty of the Director to complete the examination and then pass upon the question as to whether any of those who had taken the full examination were qualified to be placed on the employ-ment list for the office of assistant personnel director. Under the Act the plaintiff has the right to insist upon that pro-cedure being carried through and can enforce that right, it would seem, by mandamus.

That right, however, is not the one which the plaintiff is seeking to enforce in this action. What he is seeking here is to prevent another examination for places on the employ-ment list which will be thrown open to nonresidents, and that is quite a different thing.

This distinction must be borne in mind: under the Act,

examinations lead only to a place on the employment list; they do not give any applicant the right to an appointment. The Act provides that when a position is to be filled the Director shall certify to the appointing authority the names of the three persons highest on the employment list. The appointing authority may appoint any of the three (§668e). Accordingly, the mere fact that a person stands highest or among the three highest on the employment list gives him no right to an appointment to any given position.

The Act requires the Director, when a single position is to be filled, to submit three names to the appointing authority. Section 668e provides that "if ... .the employment list shall not contain a sufficient number of names of persons to make a certification of the three names to which the appointing authority is entitled, the director shall hold tests for the purpose of establishing an employment list." If, therefore, in the present case, the examination which had been started had gone forward to its conclusion and as a result thereof only one or two names had been placed on the employment list, it would then have been necessary under the Act for the Director to hold tests to establish a new employment list. To be specific, suppose that as a result of the examination already started the plaintiff had been the only person whose name was on the employment list. Then, clearly, under section 668e a new employment list would have to be established on the basis of another test. And in order to get on that new employment list it is probably true (although it is not necessary for the decision of this case to so hold) that the plaintiff would have to take the test. Certainly, as a practical proposition, it is difficult to see how, granting that the plaintiff was on the employment list already but was alone on that list, his relative standing thereon could be ascertained as compared to other people who got on the list through an entirely different examination.

The Director has decided on the basis of the results of the examination so far conducted that that examination will not produce three persons whose names he can put on the employment list. That decision has been arrived at in good faith and can not be attacked. It would therefore seem futile to proceed with it further. The most that the completion of the examination would produce would be an employment list of only one or two names. Such a list would not be adequate and a new examination would have to be held.

It is therefore clear that the Director is now entitled to call for a new test. In doing so he certainly is not violating any right of the plaintiff so as to entitle the plaintiff to an injunction.

The only question remaining is as to whether the Director is acting illegally in throwing the new examination open to nonresidents.

Section 669e provides that no person shall be eligible to take an examination nor eligible for appointment unless he shall have been a resident of this State for two years, "provided the personnel director may waive said residence requirement when no qualified resident of this state shall apply for such examination or position." At first blush it would appear that this section means that the Personnel Director could not waive the residence requirement if any single person, resident of this State, who was qualified applied to take an examination. However, the section must be read in connection with the whole Act. It is fundamental in the Act that the appointing authority in filling a position shall have three persons to choose from. The reason for this is apparent. A person who appears qualified for a position on the basis of an examination might well have personal characteristics which would ruin the *esprit de corps* of a department. Such characteristics would not show up on an examination but might be known to the appointing authority. The Act clearly, therefore, would not provide the best employees for the State if it compelled the head of a department to employ a person simply because he was the only one whose name was on the employment list. This section, therefore, can not mean that if the Director finds a single person in the State who is qualified he must admit only that person to the examination and then necessarily certify only that person for appointment. Such an interpretation of the section would defeat the purposes of the Act.

What the section says is that the Director may waive the residence requirement for taking an examination when no qualified resident shall apply for the "position." Bearing in mind that the purpose of the examination is not directly to fill a job but rather to fill "positions" on the employment list, it is apparent that, when the Legislature used the word "position" in this section, it was referring to a position on the employment list. That is, for each job to be filled there are three positions on the employment list to be filled and if only

one qualified resident of the State appears there is still no qualified resident available for either of the other two positions. Rather than upset the whole theory of appointments under the Act it is wiser to interpret this section as applying to "positions" on the employment lists. When so interpreted it means that when the Director finds that there are not enough qualified residents applying to fill all three of the necessary positions on the employment list for any office he then may waive the residence requirement.

It is apparent that the Director has so found in this case. Accordingly, without entering into the question as to whether this plaintiff has any legal rights which give him a standing to ask for an injunction against the proposed examination, it is concluded that the Director has not acted illegally in calling for the test as he has and in waiving the residence requirements.

The application for a temporary injunction is denied.